ROBERTS, J.,
for the Court.
SUMMARY OF THE CASE
¶ 1. This appeal requires an analysis of the consequences of a violation of the Confrontation Clause as discussed in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Our precise analysis involves circumstances in which: (1) the victim was physically present at trial; (2) on direct examination during the prosecution’s case-in-chief, the victim claimed a loss of memory; (3) the trial court determined the victim was therefore “unavailable” due to that alleged loss of memory; (4) the trial court found that the “unavailable” victim’s prior inconsistent statement was admissible as substantive evidence of the defendant’s guilt; and (5) on cross-examination by defense counsel, the victim regained his memory, disavowed his prior statement, and testified contrary to his prior statement.
¶ 2. Kenivel Smith was convicted of aggravated assault and sentenced by the Tu-nica County Circuit Court to serve twenty years in the custody of the Mississippi Department of Corrections. Aggrieved, he appeals and argues that: (1) the trial court erred in allowing the victim’s written and audiotaped statements into evidence, and (2) the evidence does not support the verdict. Finding that the circuit court erred when it allowed the prosecution to admit the victim’s prior inconsistent statement, we reverse the circuit court’s judgment and remand this matter for a new trial consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶ 3. Shortly before midnight on December 28, 2004, Andre Davis was shot in the upper thigh after returning to his home in Tunica, Mississippi. Davis was treated at the local hospital that night and discharged to return home at approximately 3:00 a.m. the next morning. At approximately 9:00 a.m., Davis provided a brief written statement and a detailed audio-taped statement to Investigator Harold Harris of the Tunica County Sheriffs Department. In his written and audiotaped statements, Davis adamantly indicated that Smith shot him.
¶ 4. In his audiotaped statement, Davis explained that on the previous day he went hunting with several friends. According to Davis, while he was hunting, Smith went to Davis’s house and threatened Davis’s wife. Davis went on to state that after he returned home, Smith called him and accused him of stealing drugs that Smith hid in the area where Davis and his friends had been hunting rabbits. Smith told Davis that he wanted to meet to discuss the matter further. Davis complied and went to John Henry Wilson’s house. Wilson is Smith’s father. Additionally, Wilson’s home is across the street from Davis’s.
¶ 5. According to Davis’s audiotaped statement, Davis and Smith discussed the matter on Wilson’s porch. Davis reaffirmed that he did not know anything about any missing drugs. According to Davis, at that moment Smith opened the door and fired four shots at him. Davis reported that he ran back to his residence, while Smith continued to fire at him. When asked if he had seen the person who had shot him, Davis responded, “[y]es. I was face to face, like me and you are right now.” Authorities recovered nine shell *316 casings in the street that were fired from a nine-millimeter pistol.
¶ 6. A Tunica County grand jury returned an indictment against Smith and charged him with aggravated assault. Smith pled “not guilty” and went to trial on September 27, 2006.[1] The prosecution called three witnesses, but Davis was the prosecution’s crucial witness, and the witness most pertinent to the present appeal. Davis’s direct testimony was drastically different from his prior written and audio-taped statements.
¶ 7. During direct examination, Davis testified that: (1) he spoke with law enforcement the morning after he was shot; (2) he gave a statement; and (3) he signed a document. However, Davis testified that he could not recall what he said in that statement.[2]
¶ 8. At that point, the prosecution showed Davis his written statement and asked him whether he recognized it. He acknowledged that he did. The prosecution then gave Davis an opportunity to review the statement to see if it could refresh his memory. After reviewing the statement, Davis stated that his memory had not been refreshed. The following exchange then occurred:
Q: Looking to the top line of that particular document, now, you are saying that this is the statement that you gave police that night?
A: Yes, sir.
Q: It is your statement?
A: Yes, sir.
Q: Now, when they asked you what happened that night, what did you tell them?
A: Mr. Smith shot me up [sic] last night about some drugs.
Q: I’m sorry, I didn’t hear you?
A: Mr. Smith shot me last night about some drugs.
Q: Mr. Smith shot you last night about some drugs?
A: Right.
Q: Is that what you told law enforcement?
A: Yes, sir.
¶ 9. At that point, counsel for Smith asked to approach the bench. During the bench conference that followed, Smith’s attorney stated, “this goes to the very heart of our motion in limine.”[3] The prosecution responded by arguing that Davis’s memory loss rendered him “unavailable” pursuant to Mississippi Rule of Evidence 804(a)(3). The circuit court excused the jury and stated as follows:
For the record, the State has called Andre Davis, the victim of the crime that we’re trying today. The defendant [sic] has indicated a lack of being able to recall what happened on the day in question when he was shot. Both attorneys agree that [R]ule 804 is where we are looking at to address the issue of the statement made the day after the incident in question. The Court finds that the requirements of 804(a), unavailable *317 as a witness, have been met. The — Mr. Davis indicates lack of memory after the review of the statement. I’m looking at (b) and find under the conditions with which the residual other exception elements that are the litmus test that we review are as follows:
The adverse party must have notice of intent to use. The Court finds that it did because it filed a motion to exclude it. So it did know about this statement. [4]
The statement must have circumstantial guarantees of trustworthiness. It’s admitted by the — by the witness that this is the statement he gave to the police. He recognized the statement that he gave, given one day after the incident in question. The Court finds that there is a circumstantial guarantee of trustworthiness.
Three, it must be offered as evidence of material fact, and that’s obvious. Four and five are, I think, where the rub comes in. It must be more probative than other evidence. And the purpose of the rules, the interest of justice must be best served. So, that’s where we are.
Smith’s attorney then argued that pursuant to Crawford, admission of Davis’s prior statements would violate Smith’s right to confront witnesses against him. The circuit court noted Smith’s objection and went on to state as follows:
What I find is that we are under 804, the residual exception under 804(b)(5). Cummins v. State[, 515 So.2d 869 (Miss.1987)], [an] '87 case, addressed the hearsay rule, as well as Randall v. State[, 806 So.2d 185 (Miss.2001) ], which is a 2001 case. I’m sure the confrontational [sic] clause was addressed in those. And we’re still down to whether or not the statement is more probative on the issue where it is offered than any other evidence which could be procured reasonably, and the general purpose of the rules, the interest of justice would be best served. So, the court is going to say, and state for the record, that that’s what I’m looking at. So let’s address those two issues—
¶ 10. Ultimately, the circuit court overruled Smith’s objection and found that Davis was “unavailable” within the meaning of Rule 804(a)(3). The circuit court went on to find that Davis’s written statement was admissible pursuant to Mississippi Rule of Evidence 804(b)(5). Finally, the circuit court found that the prior statements were more probative than prejudicial. Accordingly, the circuit court allowed the prosecution to enter Davis’s prior written statement and Davis’s prior audiotaped statement into evidence.[5]
¶ 11. When the jury returned to the courtroom, Davis continued his direct testimony. Davis testified that he did, in fact, give a statement, but he could not remember when he did so. When asked whether the “Mr. Smith” in his statement referred to Kenivel Smith, Davis answered, “[y]es, sir.” Shortly afterward, the circuit court stated, “let me see y’all in chambers real quick.” The record does not contain a transcript of the events that transpired in the circuit court’s chambers. The next notation in the record is the circuit court’s notation that Davis’s prior statements were not admissible into evidence for any *318 purpose other than identification. The prosecution resumed direct examination of Davis. At that point, the following exchange occurred:
Q: Mr. Davis, going back again, you’ve had the opportunity to review that document that we showed you earlier being the one that’s in front of you, is that correct?
A: No, sir.
Q: You haven’t had a chance to review it?
A: No, sir.
Q: Is that not the same one that we were talking about before?
A: Today in court?
Q: Today in the — right, today in the courtroom.
A: That’s right.
Q: Now, having reviewed that document, is your memory refreshed concerning the events that occurred during the shooting?
A: No, sii*.
[[Image here]]
Q: Do you remember telling the police that night that — or when you talked to them, that Kenivel Smith was the one that shot you?
A: Yes, sir.
Q: You do remember telling them that?
A: Yes, sir.
Q: Do you remember telling the police that when they asked you how you knew that it was Kenivel Smith who shot you that night that you saw him shoot you?
A: No, sir.
Q: You don’t remember saying that?
A: No, sir.
Q: Do you remember talking to the police about this that you knew it was him because you were face to face like me and you are right now?
A: No sir, I can’t remember.
Q: You don’t remember making those statements?
A: I probably made them, but it’s been two years ago, your Honor. Two years ago, I don’t remember anything.
[[Image here]]
A: Yes, sir. It’s been two years ago, your Honor, and I probably wrote a statement with you. I can’t hardly remember what happened two years ago.
[[Image here]]
BY THE WITNESS: I said I probably made a statement. But since it’s probably been two years ago, your Honor, I didn’t—
BY THE COURT: You made that statement two years ago and you don’t remember what?
BY THE WITNESS: No, sir, I can’t remember.
BY THE COURT: You can’t—
BY THE WITNESS: I can’t remember, no, sir.
BY THE COURT: You can’t remember?
BY THE WITNESS: No, air.
BY THE COURT: Well, why did you say Mr. Smith did it, in that statement? You said that you reviewed it. Why did you tell them that?
BY THE WITNESS: ‘Cause [sic] my nephew, you know, they was [sic] out there and they said they saw a car rode — drive by, and—
[[Image here]]
BY THE WITNESS: Your Honor, the car — my nephew said a car rode by. They said Kenivel was in it. When I was standing in the yard, shots was [sic] fired from across the street. And the other guys come [sic] and *319 they said Kenivel was the one guy that shot you.
[[Image here]]
The prosecution resumed direct examination of Davis, and the following exchange transpired:
Q: Let me see if I get what you said correctly. You said you [sic] that were told that the shots came across from—
A: Yes.
Q: Do you know if they came from across the street?
A: Yes, sir.
Q: Do you have any memory of telling law enforcement, the day after this happened, that it was Kenivel Smith?
A: Yes, sir.
Q: You do remember saying that?
A: Yes, sir.
Q: Do you remember saying that how you know it was Kenivel and did you see him shoot you, that you had seen him shoot you? Do you remember saying that?
A: No, sir.
Q: Do you remember saying that you were sure it was him because it was face to face just like me and you?
A: No, sir.
Q: You don’t recall saying that?
A: No, sir. Your Honor, I’m so pressured today — and, so pressured today as far as sitting up on the witness stand to where I’m so upset and frustrated right now, your Hon- or, I can’t remember anything. You know, I’m pressured, pressured, pressured to where, you know, right now I just ain’t focusing.
Q: So, are you saying regardless of what documents you looked at concerning what happened on December 28, 2004, your memory concerning those events will not be refreshed?
A: No, sir.
¶ 12. The record indicates that the circuit court conducted another bench conference outside the presence of the jury. The circuit court announced that it was “going to let [Davis’s written statement and au-diotaped statement] in under the previous analysis the Court had given. The Court thought that he had refreshed his memory. Obviously, he has not, from the testimony he’s given.” The prosecution then played Davis’s audiotaped statement for the jury. After Davis’s taped statement was played, the prosecution tendered Davis to Smith’s attorney for cross-examination.
¶ 13. During cross-examination, Davis testified as follows:
Q: Mr. Davis, I represent Mr. Smith in this matter and I’m going to ask you some questions about this. Earlier, you said that you were under a lot of pressure. Do you remember making that statement just a few minutes ago?
A: Yes, sir.
Q: Why do you feel like you are under a lot of pressure?
A: Yesterday, sir, I didn’t want to testify. I was ready to be put in jail if I didn’t.
[[Image here]]
Q: Okay. Now, Officer Harris, has he put pressure on you?
A: Yes, sir. Yes, sir, he threatened to put me in jail yesterday. Called the squad car and everything to come get me. Said they had a warrant for me.
Q: Now, has Mr. Smith put any pressure on you?
A: No, sir.
*320 Q: Has anyone promised you [sic] or put any pressure on you on behalf of Mr. Smith?
A: No, sir.
Q: No one has contacted you, promised you anything, or told you to testify any different than what you are testifying to today?
A: No, sir. Just like to settle my differences and put it in Lord’s hands where I won’t have no more problems then.
Q: Now, those statements that — this tape, I noticed these statements directly conflicted [with] what you said earlier.
A: Yes, sir.
Q: You stated earlier today that the shots came from the street—
A: Yes, sir.
Q: —or from across the street. And I believe we’ve had a deputy testify, the State’s lead off witness, I believe she testified that the spent shells, the cartridges, were found on the street?
A: Yes, sir.
Q: Do you know where they were found?
A: No, sir.
[[Image here]]
Q: Did you talk to anyone — did you talk to Detective Harris prior to taking — giving this statement that you’ve given?
A: Yes, sir.
Q: Did he or anyone on behalf of the State suggest what you should say ' in that statement?
A: No, sir.
Q: So, these were your words. No one put these words in your mouth?
A: They were going to lock me up yesterday, sir if I didn’t testify today.
I understand that. They said you were subpoenaed and you had to testify. I’m just trying to get to the truth, okay. And I find inconsistencies in the statement, so I— where — do you recall Mr. Smith shooting you? O’
A: That what the — I recall the shooting but I never did see a face.
Do you believe — well, you say in your statements that Mr. Smith was face to face. You said he was right there in the corner. He was shooting up into the house? &
Yes, sir. <1
Is that what happened? &
The shots came from the house. I was standing face to face towards the house in my yard. <|
Now, you stated, I believe on page three, that you were face to face like me and you are right now. And then go on to page four, and you said that he was standing in the door, standing in the door of the house. Is that correct? I mean— &
I could not say. >
You can’t remember. Well, this statement, do you remember today when you said the shots came from the street? <©
Yeah, I was standing — coming from hunting that day.
And the bullets were found in the street? <©
Yes, sir. >
You stated in this statement that it was Mr. Smith that you saw face to face. But that can’t be because it was down the street where the bullets were found, the spent casing. We know that’s where the casing came from. He was shot from a semi-automatic, correct? <©
[[Image here]]
*321 Q: Did you understand my question?
A: Yes, sir.
Q: You said that the — you’re testifying, you are telling this jury today that the shots came from either out in the street or across the street, is that right?
A: Yes, sir.
Q: And so you are telling the jury today that Mr. Smith was not on the porch?
A: No, sir.
Q: You aren’t telling me that?
A: I didn’t — it was dark. It’s dark in that area up in there.
Q: Okay. Was he on the porch or not?
A: I don’t know.
Q: Did he come to the door and say anything to you?
A: No, sir.
Q: Okay. So when you stated that he was there, you were mistaken about that?
A: Yes, sir, a bunch of promises made, sir.
Davis went on to testify that he did not see Smith shoot at him that night and that his prior statements were false. Additional aspects of the events surrounding Davis’s testimony and the substance of that testimony will be discussed in much greater detail in the analysis portion of this opinion.
¶ 14. As mentioned, the jury found Smith guilty of aggravated assault, and the circuit court sentenced Smith to twenty years in the custody of the MDOC. Smith now appeals.
ANALYSIS
WHETHER THE CIRCUIT COURT ERRED WHEN IT ALLOWED THE PROSECUTION TO ENTER DAVIS’S PRETRIAL STATEMENTS INTO EVIDENCE.
¶ 15. In this issue, Smith claims the circuit court committed reversible error when it allowed the prosecution to enter Davis’s prior statements into evidence as substantive proof of the truth contained therein. “The relevancy and admissibility of evidence are [issues] largely within the discretion of the trial court and reversal may be had only where that discretion has been abused.” Davis v. State, 684 So.2d 648, 661 (Miss.1996).
¶ 16. The circuit court allowed the prosecution to enter Davis’s prior statements over Smith’s objection, among others, that admission of Davis’s statement constituted “putting a non-confronted statement on in lieu of the witness who was [there] to testify, in lieu of the witness.” At trial, Smith argued that allowing Davis’s prior statements violated the principles announced in Crawford. On appeal, Smith maintains that the circuit court’s decision was contrary to the United States Supreme Court’s decision in Crawford.
¶ 17. In Crawford, the defendant appealed after being convicted of assault in state court. Crawford, 541 U.S. at 41, 124 S.Ct. 1354. The defendant’s wife witnessed the altercation and provided the police with a recorded statement regarding her husband’s alleged crime. Id. at 66-67, 124 S.Ct. 1354. The defendant asserted the marital privilege and precluded the wife from testifying at trial. Id. at 40, 124 S.Ct. 1354. However, the trial court found that the wife was unavailable as a witness, the statement was admissible, and allowed the statement to be played for the jury. Id. at 65, 124 S.Ct. 1354.
¶ 18. On appeal, the United States Supreme Court concluded that the wife’s pri- or testimonial statement was barred because the defendant did not have a prior opportunity to cross-examine her regard *322 less of the reliability of the statement. Id. at 68, 124 S.Ct. 1354. To be precise, the Supreme Court held that “[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.” Id. at 68-69, 124 S.Ct. 1354. The Crawford Court also held that:
Where testimonial evidence is at issue, ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of “testimonial.” Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.
Id. at 68, 124 S.Ct. 1354 (emphasis added) (footnote omitted).
¶ 19. As a threshold matter, we must first determine whether the evidence at issue qualifies as “hearsay.” Pursuant to Mississippi Rule of Evidence 801(c), “[hjearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” (internal quotations omitted). “Hearsay is not admissible except as provided by law.” M.R.E. 802. There can be no doubt that Davis’s pretrial statements qualify as hearsay.
¶ 20. As for whether Davis’s statements were “testimonial” as contemplated by Crawford, we must conclude that they were. As mentioned, the United States Supreme Court declined to provide a comprehensive definition of “testimonial,” but it did state that “[wjhatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.” Crawford, 541 U.S. at 68, 124 S.Ct. 1354. Though Davis was not interrogated as if he was a suspect to his own shooting, he gave his statements in response to questions from authorities on the day after he was shot.
¶ 21. The United States Supreme Court subsequently addressed the need to “determine more precisely which police interrogations produce testimony.” Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). In Davis, the Supreme Court explained that:
[statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
Davis, 547 U.S. at 822, 126 S.Ct. 2266. Accordingly, Davis’s statements in response to questions from authorities — otherwise known as a police interrogation'— are unquestionably testimonial and would be admissible only if Davis was unavailable and the defendant had a prior opportunity to cross-examine him. Crawford, 541 U.S. at 52, 68, 124 S.Ct. 1354; Smith v. State, 986 So.2d 290, 297(¶ 21) (Miss.2008).
¶ 22. Rule 804(a)(3) provides that a witness is “unavailable” when a declarant “[tjestifies to a lack of memory of the subject matter of his statement.” From an examination of the record it appears obvious that Davis became a favorable wit *323 ness for Smith during cross-examination, if not during direct. Davis testified: (1) that Smith did not shoot him, (2) that he lied in his December 29, 2004, statement to the police, and (3) that the reason he identified Smith as the shooter was a result of hearsay from other witnesses to the shooting. In other words, Davis’s amnesia disappeared, or at least, it strangely improved. The following colloquy during cross-examination of Davis is evidence of such a conclusion:
Q: Okay. Well, tell us about that. That’s what I want to hear. We want to know the truth, the truth. The truth is, you didn’t see Kenivel Smith, did you?
A: No, sir.
Q: Have you ever seen Kenivel Smith—
A: Not till [sic] today.
Q: —shooting? Did you ever see him shoot at you?
A: No, sir.
Q: Did you see him shoot at you that night?
A: No, sir.
Q: Was he standing on the porch?
A: No, sir.
Q: Shots came across the street?
A: Yes, sir.
Q: Do you believe Kenivel Smith shot you?
A: I don’t know, sir. I was — I was shot when it happened I sat down. It — I—I didn’t know I was shot till [sic] my nephew said, “Andre, you are bleeding.”
Q: Did someone tell you to say that Kenivel Smith shot you?
A: No, sir.
Q: So why did you give this statement?
A: ‘Cause [sic] my nephew — they— they — you know how you hear on the street that Kenivel shot you, and such and such.
So, you heard on the street that Kenivel Smith shot you? <©
Yes, sir. ¡>
You are not testifying today that you saw Kenivel shoot you there? <©
No, sir. ¡>
Because in your statement you say that he came to the door and he said something to you and then he shot you. He fired several shots, is that correct? <©
Yes, sir. ¡>
That’s not true? «©
No, sir. !>
So this statement is a falsehood? <©
Yes, sir. i>
¶ 23. Assuming, for the sake of argument, that the circuit court may have been correct when it initially determined that Davis was “unavailable” due to memory loss under Mississippi Rule of Evidence 804(a)(3), the record affirmatively establishes no real loss of memory after Davis was cross-examined, as is shown by the colloquy quoted above. Clearly, reversal is required “in the interest of justice” when the prosecution is permitted to introduce an out-of-court hearsay statement for the truth asserted therein as a result of its main witness’s professed loss of memory on direct examination; but, when cross-examined, the witness’s responses indicate that his loss of memory is entirely fabricated.
¶ 24. As previously mentioned, Davis’s testimonial hearsay statements would be admissible only if Davis was unavailable and Smith had a prior opportunity to cross-examine him. Crawford, 541 U.S. at 52, 68, 124 S.Ct. 1354; Smith, 986 So.2d at 297(¶ 21). It is undisputed that Smith did not have an opportunity to *324 cross-examine Davis when Davis provided his statements. That Smith had an opportunity to cross-examine Davis at trial does not necessarily cure the constitutional confrontation problem.[6] While the distinction may appear slight, the “Davis” who testified at Smith’s trial was no longer the accusing witness against Smith. Smith’s true accusing witness was the “Davis” of December 29, 2004. Therefore, Smith was unable to confront his accuser, and the damage had already been done.
¶ 25. Another matter bears discussion. The circuit court allowed the prosecution to enter Davis’s prior statements pursuant to Mississippi Rule of Evidence 804(b)(5), which provides as follows:
(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
[[Image here]]
(5) Other Exceptions.
A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.
However, Crawford specifically declined to admit testimonial hearsay based on a determination of reliability. Crawford, 541 U.S. at 62, 124 S.Ct. 1354 (overruling the reliability test in Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). Here, the circuit court found that Davis’s statements were admissible for exactly the rationale that the Supreme Court found similar evidence to be inadmissible. See also Smith, 986 So.2d at 297-98 (¶23-26). If Crawford teaches us anything, it is that the rules of evidence are subordinate to the Sixth Amendment’s Confrontation Clause in a criminal case.[7]
*325 ¶ 26. It cannot be seriously argued that the circuit court did not err when it concluded that Davis’s written and audiotaped statements were admissible. Even if the circuit court was correct when it found Davis “unavailable” as a witness due to memory loss under Rule 804(a)(3), it is undisputed that on December 29, 2004, Smith did not have an opportunity to cross-examine Davis about his accusations. That is, Smith did not have an opportunity “to be confronted with the witnesses against him.” U.S. Const. Amend. VI. Therefore, under Crawford, the circuit court erred when it found the written statement and audiotaped statement admissible as substantive evidence of Smith’s guilt.
¶ 27. In addition to violating Davis’s constitutional right to confront his accuser, the circuit court erred when it found that Smith’s statement was admissible under an exception to the hearsay rule. Although I agree with the dissent that admittance under Rule 804(b)(5) was error, I find that such error was far from harmless.
¶ 28. The dissent would find that Davis’s statement was properly admitted under Rule 803(5), which states as follows:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
[[Image here]]
(5) Recorded Recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but mat/ not itself be received as an exhibit unless offered by an adverse party.
M.R.E. 803(5) (emphasis added). It is clear from the record that the facts surrounding Davis’s statement do not satisfy the above requirements for admittance. While it is true that Davis claimed he did not remember what the statement said during direct examination by the prosecution, it is obvious that prior to admitting the statement-in-question, the circuit court knew that Davis fully remembered the statement and explained to the trial court why he told the police that Smith shot him. Specifically, Davis told the circuit court that he said Smith shot him because his nephews told him that was the case. Further, Davis testified: that (1) Smith did not shoot him; (2) he did not see Smith on the night of the shooting; (3) he did not see Smith shoot at him; and (4) he told the police that Smith shot him because that is what he was told. Not only does Davis’s testimony show that the contents of his out-of-court statement did not reflect his knowledge of that night correctly, it is apparent that his knowledge of the statement’s contents was never insufficient so as to preclude full and accurate testimony. Moreover, under Rule 803(5), the written statement and the audiotaped statement should not have been received into evidence as was done by the circuit court.
¶ 29. If Davis had not initially tendered the memory loss excuse and stated that Smith was not the shooter, the prosecution’s sole recourse would have been to admit the December 29, 2004, *326 statement for the purposes of impeachment as it would have amounted to a prior inconsistent statement, and the substantive evidence identifying Smith as the shooter would have been reduced to zero. Use of a prior inconsistent statement may only be used to impeach the credibility of a witness, not to prove the inherent truthfulness of that prior statement. Harrison v. State, 534 So.2d 175, 178 (Miss.1988) (holding “a prosecutor may not use prior statements of a witness under the guise of impeachment for the primary purpose of placing before the jury substantive evidence which is not otherwise admissible.”) (internal quotations omitted). Moreover, upon request, a party is entitled to a jury instruction on the subject. See, e.g., Long v. State, 934 So.2d 313, 316(¶ 10) (Miss.Ct.App.2006). Here, the jury was allowed to consider the written statement and the audiotaped statement as proof that Smith was in fact the shooter. We could not say beyond a reasonable doubt that harmless error somehow resurrects this conviction, particularly after the jury heard Davis’s own voice on the tape saying Smith was the shooter.
¶ 30. Davis’s prior out-of-court statements made to law enforcement officials were the prosecution’s sole evidence that Smith shot Davis. There simply was no other evidence identifying the shooter. In fact, the defense produced an alleged eyewitness, Jackson, that stated Smith was not the shooter. Further, Davis emphatically denied that Smith or any of his friends threatened him or any of his family. He stated that he was scared to testify because of threats or insinuations made by Investigator Harris.[8]
¶ 31. Smith requested a new trial, but the circuit court denied Smith’s request. A trial court is granted the power to order a new trial under several circumstances. See URCCC 10.05. Two such circumstances immediately surface and either of which justify such a ruling. Specifically, a trial court may grant a new trial, upon written motion, “[i]f required in the interests of justice” or “[i]f the jury ... received any evidence ... not authorized by the court, or the court ... admitted illegal testimony....” URCCC 10.05(1) and (4). As stated above, justice was not served as a result of Smith’s conviction, as it was supported solely by inadmissible hearsay that was used to prove the truth of the matter asserted, admittance of which violated the Confrontation Clause of the Sixth Amendment, as well as our rules of evidence. Such proof surely cannot constitute proof of guilt beyond a reasonable doubt.
¶ 32. Having found that the circuit court erred when it allowed the prosecution to submit Davis’s prior statements in violation of Smith’s confrontation rights, that Davis’s prior statement was not admissible pursuant to any exception to the hearsay rule, and that the error was prejudicial to Smith and not harmless error, it is clear that Smith is entitled to a new trial. Under the facts presented in the record before us, admittance of Davis’s out-of-court statement was at worst a violation of Smith’s constitutional right to confront his accuser and, at best, a violation of the Mississippi Rules of Evidence as the statement constituted inadmissible hearsay. We are required to reverse the judgment of the circuit court and remand this matter for a new trial consistent with this opinion.
¶ 33. THE JUDGMENT OF THE TU-NICA COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH *327 THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND MYERS, P.JJ. KING, C.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. CHANDLER, J., NOT PARTICIPATING.

. Authorities could not verify Smith’s address, and Smith was finally captured approximately one year later.

. Davis was interviewed by Investigator Harris approximately six hours after Davis was discharged from the hospital following treatment for a gunshot wound to the upper thigh. Claiming a total memory loss concerning what he told the investigating officer under such traumatic circumstances seems strangely suspect, at best.

.The record does not contain a transcript of the hearing on Smith's motion in limine. However, the record contains the clerk’s docket sheet. The docket sheet indicates that Smith filed a motion in limine to exclude Davis's prior out-of-court statements.

. Based on comments made by the circuit court and counsel during Smith's trial, it appears that no issue existed as to whether Smith had notice that the prosecution intended to use Davis’s statements.

. The transcript of Davis's taped statement was not admitted into evidence. However, the jury was allowed to follow the transcript as the prosecution played Davis's audiotaped statement.

. Crawford states that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraint at all on the use of his prior testimonial statements.” Crawford, 541 U.S. at 59 n. 9, 124 S.Ct. 1354. However, under the unique facts of this case in which: (1) the declarant is deemed "unavailable” during direct examination because he claimed not to remember his prior, out-of-court statement, thus, opening the door for admittance of the statement, and (2) "available" for cross-examination, during which Davis testified to the contents of his prior statement and the reasons why he gave it, so as to vacate the basis for the trial court's determination that he was unavailable, this reversal on Davis's part resurrects his availability for the trial as a whole. Thus, admission of the statement based upon Davis’s unavailability becomes erroneous.

. The following quotations from Crawford evince such a sentiment:
Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability.” Certainly none of the authorities discussed above acknowledges any general reliability exception to the common-law rule. Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation.... Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with [a] jury trial *325 because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes .... Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.
Crawford, 541 U.S. at 61, 62, 68, 124 S.Ct. 1354.

. It is noteworthy that Davis was a prior convicted felon recently released from custody. Davis also had a drug charge pending against him.